**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| HALIDA H.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25-cv-2013-CJW<br><br>**REPORT AND RECOMMENDATION** |

---

Halida H. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## *I. BACKGROUND*

Claimant was born in 1973. (AR[1] at 329.) She completed the eighth grade. (*Id.* at 493.) Claimant allegedly became disabled due to COPD, depression, stress/anxiety, back pain, breathing problems, and headaches. (*Id.* at 492.) Claimant's alleged onset of disability date is August 19, 2021. (*Id.* at 45, 329.) On August 28, 2022, Claimant protectively filed her application for DIB. (*Id.* at 45, 447.) Her claim was denied originally on November 4, 2022 (*id.* at 45, 329-336) and was denied on reconsideration on May 17, 2023. (*Id.* at 45, 337-344.) A hearing was held on December 19, 2023,

[1] "AR" cites refer to pages in the Administrative Record.

with Claimant and her attorney Hugh Field appearing by online video before Administrative Law Judge ("ALJ") Scott Gulick. (*Id.* at 305-328.) Vocational Expert ("VE") Denise Waddell also appeared at the hearing via online video, along with an interpreter for Claimant. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on February 20, 2024. (*Id.* at 45-53.)

Claimant requested review and the Appeals Council denied review on March 24, 2025. (*Id.* at 1-4.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On April 7, 2025, Claimant timely filed his Complaint in this Court. (Doc. 4.) On December 22, 2025, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## *II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

> supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

***A. The ALJ's Findings***

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2026. (AR at 47.) The ALJ then applied the first step of the analysis and determined that Claimant had engaged in substantial gainful activity from October 2021 through December 2021, but "there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity" and the "remaining findings address the period the claimant did not engage in substantial gainful activity." (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: obesity, hypothyroidism, and degenerative disc disease of the lumbar spine and cervical spine. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 49.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine) and 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina). (*Id.*) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work, as defined in 20 CFR [§] 404.1567(b) including the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour day, stand for 6 hours in an 8 hour-day and walk for 6 hours in an 8-hour day. The claimant can climb ladders, ropes and scaffolds occasionally, and can climb ramps and stairs, stoop, kneel, crouch and crawl frequently.

(*Id.*) Also at the fourth step, the ALJ determined that Claimant was able to perform her past relevant work as a housekeeper as generally performed. (*Id.* at 52.) Alternatively, the ALJ determined that Claimant could perform other jobs that exist in significant

numbers in the national economy, including folding machine operator, crimper, and binding machine operator. (*Id.* at 52-53.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 53.)

***B. The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate

weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## *III. DISCUSSION*

### *A. Parties' Arguments*

Claimant argues that the ALJ erred in evaluating the opinions of Dr. Lydia Mustafic, M.D., a treating physician. (Doc. 11 at 19.) Claimant also argues that the ALJ failed to properly evaluate her subjective allegations of disability. (*Id.* at 24.) Specifically, Claimant argues that the "objective medical evidence substantiates [her] subjective allegations regarding her symptoms and is inconsistent with the ALJ's residual functional capacity assessment." (*Id.* at 26.) Further, Claimant asserts that her "daily activities are consistent with her claims of disabling symptoms." (*Id.* at 27.) Lastly, Claimant contends that her "treatment history provides strong support for her claims of disabling symptoms." (*Id.* at 29.) Finally, Claimant argues that the "ALJ erred as a matter of law in relying on the vocational expert's response to an improper hypothetical question." (*Id.* at 30.)

The Commissioner argues that "Plaintiff has failed to establish error that warrants remand." (Doc. 22 at 6.) Claimant maintains that the "ALJ properly found Dr. Mustafic's medical opinion not persuasive." (*Id.* at 7.) The Commissioner also argues that the "ALJ properly evaluated Plaintiff's subjective complaints." (*Id.* at 12.) Lastly,

the Commissioner asserts that the "vocational expert's testimony is substantial evidence supporting the ALJ's decision." (*Id.* at 15.) The Commissioner maintains that "[b]ecause the ALJ's hypothetical question mirrored Plaintiff's RFC, [the VE's] testimony supports the ALJ's conclusion Plaintiff was not disabled." (*Id.* at 16.)

### *B. Pertinent Medical Evidence*

On December 11, 2023, Dr. Mustafic provided a "Physical Medical Opinion." (AR at 1269-73.) Dr. Mustafic noted that she had seen Claimant one to four times per month over the past two years. (*Id.* at 1269.) Dr. Mustafic diagnosed Claimant with cervical radiculopathy, lumbar radiculopathy, major depressive disorder, and COPD. (*Id.*) Dr. Mustafic described Claimant's symptoms as follows: chronic pain in low back, neck, and legs, chronic fatigue, very weak right leg, pain in arms, and depression. (*Id.*) Dr. Mustafic also described "pain in neck going down into arms," "low back pain going into legs, and worse pain with walking, lifting, twisting, and bending. (*Id.*) Dr. Mustafic noted that Claimant was consistently depressed during office visits. (*Id.*) Dr. Mustafic also noted MRI from July 2023 showed "C3-C4 central and left paracentral disc extension compromising spinal cord, severe bilateral neuro-foraminal stenosis [at] C5-C6, moderately severe on [right] at C4-C5, [and] MRI [of] lumbar spine . . . [showing] L4-L5 disc protrusion compressing L5 nerve root." (*Id.*) Dr. Mustafic described Claimant's treatment as follows, "[patient] has done repeat [physical therapy] for neck and low back, lumbar epidural injections and is not currently a surgical candidate," she is also "[o]n Cymbalta for pain and it makes her tired." (*Id.*) Dr. Mustafic opined that Claimant was not a malingerer. (*Id.*) Dr. Mustafic also opined that Claimant's depression contributes to Claimant's symptoms and functional abilities. (*Id.* at 1270.) Further, Dr. Mustafic opined that Claimant's experience of pain and other symptoms would "constantly" interfere with her concentration and attention. (*Id.*)

Dr. Mustafic opined that Claimant had the following limitations: (1) she could walk less than one block without rest or severe pain; (2) she could sit for 5 minutes at one time before needing to get up; (3) she could stand for 5 minutes at one time before needing to sit down or walk around; (4) she could sit and stand/walk less than 2 hours in a typical eight-hour workday; (5) Claimant would need a job that allows for shifting positions from sitting to standing to walking during a typical eight-hour workday; (6) she would need to walk for 5 minutes every 15 minutes during an eight-hour workday; (7) Claimant would need to "constantly" take 10-15 minute work breaks throughout an eight-hour workday due to muscle weakness, chronic fatigue, pain, and adverse effects from medication; (8) she should never lift less than 10 pounds and never twist, stoop, crouch/squat, climb stairs, or climb ladders; (9) Claimant could grasp, turn, or twist objects bilaterally 10 percent of the time during an eight-hour workday, perform fine manipulations with her fingers bilaterally 10 percent of the time during an eight-hour workday, reach in front of her body bilaterally 5 percent of the time during an eight-hour day, and never reach overhead during an eight-hour workday. (*Id.* at 1270-72.)

Additionally, Dr. Mustafic opined that Claimant could not tolerate even a "low stress" job due to Claimant's depression and "constant" pain. (*Id.* at 1272.) According to Dr. Mustafic, Claimant would be "off task" 25 percent or more during a typical eight-hour workday. (*Id.*) Dr. Mustafic opined that Claimant would be absent from work more than four days per month due to her impairments. (*Id.*) Dr. Mustafic also noted that due to COPD, Claimant should avoid extreme temperatures, wind, humidity, dust, fumes, and gases. (*Id.*)

Dr. Mustafic explained that she considered the following factors in determining Claimant's functional abilities despite her impairments: (1) longitudinal experience of treating Claimant over time; (2) intensity, persistence, and functionally limiting effects of Claimant's symptoms; (3) Claimant's own description of her limitations; (4)

consistency of Claimant's complaints over time; (5) Claimant's response to treatment; (6) Claimant's daily activities (primarily sitting at home); (7) reports from other medical providers; and (8) the degree of consistency of Claimant's complaints with medical signs and laboratory findings as identified throughout the "Physical Medical Opinion." (*Id.* at 1273.)

### *C. Relevant Law*

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

Furthermore, an ALJ is only required to include in the hypothetical the impairments the ALJ found supported by the record. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.") (Quotation omitted). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001); *see also Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) ("In order

to constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the 'concrete consequences' of the claimant's deficiencies.") (Citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)).

Under the rules articulated in 20 C.F.R. Section 404.1520c, when determining the persuasiveness of a medical opinion, no such opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Additionally, when assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322; *see also* SSR 16-3P (S.S.A.), 2017 WL 5180304, at *7-8 (outlining factors nearly identical to the factors found in *Polaski* for evaluating the intensity, persistence, and limiting effects of an individual's symptoms). An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### *D. Analysis*

In determining that Dr. Mustafic's opinions were unpersuasive, the ALJ found that:

> The undersigned finds the opinions of Lydia Mustafic, M.D., in a Physical Medical Opinion form at Exhibit 13F are not persuasive, as they indicate that [Claimant] cannot stand, walk or sit in combination for a full workday. These opinions appear to be based on the claimant's subjective complaints rather than her own objective testing. (Exhibit 13F/5) In fact, Dr. Mustafic does not give specific citations to the record or any objective findings other than the recent MRI. (Exhibit 13F/1) Further, her own treatment notes indicate that her symptoms are relieved with conservative measures and she is not likely a surgical candidate. (Exhibit 9F/18, 20, 29) In addition, Dr. Mustafic's opinions are not consistent with the prior administrative medical findings at Exhibit 3A and they are not supported by any other medical opinion of record. While not substantial gainful activity, the claimant was also able to work after the alleged onset date.

(AR at 51-52.) The ALJ also reviewed Claimant's overall medical history:

> [T]he medical evidence does not fully support the claimant's alleged severity of symptoms and limitations. The claimant does not show the claimant had treatment for back pain with left lower extremity tingling, numbness and pain until September 2022. She had tenderness and decreased range of motion of the low back and abnormal reflexes. She was assessed with left lumbar radiculopathy and left-sided sciatica. (Exhibit 3F/178-187, 190-95, 2F, 4F/1-8) She reported that an x-ray in January 2022 showed only mild multilevel degenerative changes. She reported using only Aleve for pain. (Exhibit 1F, 2F/2, 3F/191) An MRI in October 2022 showed mild lumbar degenerative changes with moderate left-sided L5-S1 neuroforaminal stenosis secondary to a small left subarticular protrusion. She was assessed with lumbar spondylosis. She participated in pain management, but in January 2023, she said physical therapy did not improve her symptoms. (Exhibits 3F/374-75, 5F/1-2, 11F/1-2) However, in March 2023, the claimant indicated that it did improve her pain. (Exhibit 9F/18) She also had a facet injection. (Exhibit 6F/16-17) The claimant was treated for recurrent episodes of low back pain going down her right leg since May 2023. Upon examinations, she had tenderness of her right SI joint and decreased range of motion of the lumbar spine. She was

> diagnosed with right lumbar radiculopathy and prescribed Hydrocodone. (Exhibit 9F/20-33) In October 2023, the claimant was noted to have difficulty walking and getting on the examination table. She had motor weakness in the right leg. (Exhibits 8F/22, 9F/35-40) An x-ray of her SI joints showed mild degenerative changes of the pelvis. (Exhibit 9F/46) An MRI demonstrated right paracentral disc protrusion at L4-5 compressing the right L5 nerve. (Exhibit 8F/26-27) While an EMG had signs of decreased amplitude of bilateral peroneal nerve, there were no signs of active denervation. (Exhibit 8F/28) However, no doctor has recommended surgery or more extensive treatment. Despite her reports of pain, objective imaging has shown only mild to moderate findings of disc disease. She is able to ambulate without an assistive device. Overall, the record indicates that the claimant's degenerative disc disease is not as severe as alleged. Further, the State agency physician indicated that the claimant could perform light work with frequent postural activities and occasional climbing of ladders, ropes and scaffolds. (Exhibit 3A) This opinion is supported by the record and incorporated into the above found residual functional capacity.

(*Id.* at 50.) Additionally, to the extent that the state agency consultative physicians determined Claimant could perform light work,[2] the ALJ determined that the consultative physicians' opinions were persuasive:

> The undersigned finds the prior administrative medical findings regarding physical limitations at Exhibit 3A and mental limitations at Exhibit 2A are persuasive, as they indicate the claimant can do a range of light work with frequent climbing of stairs, stooping, kneeling, crouching and crawling and occasional climbing of ladders, ropes and scaffolds with no severe mental impairment. The prior administrative medical findings are generally supported by their own review of the record and the objective findings cited at Exhibits 2A/3, 5, and 3A/3-4, 5-6. Further, the overall medical evidence, near normal physical examinations, mild to moderate findings on imaging, the effectiveness of her medications, and the need for only conservative treatment are consistent with the prior administrative medical

[2] The ALJ's decision is somewhat confusing in its consideration of the consultative sources, as the decision contains a paragraph finding the consultative opinions unpersuasive to the extent that they suggest Claimant could perform medium work. A review of the consultative physicians' opinions could also be clearer but appears to conform to the ALJ's findings. *See* AR at 330-43.

> findings. (Exhibits 5F/1-2, 6F/16- 17, 8F/28, 9F/46, 11F/1-2, Testimony) Moreover, the claimant's daily living activities, including her ability to care for her son, prepare simple meals, fold laundry, dust, drive, shop for necessities and work after the alleged onset date, are consistent with these prior administrative medical findings. (Exhibits 6E, 11E, Testimony) Additionally, the State agency physician and psychologist have unique, expert training in the evaluation of disability claims.

(*Id.* at 51.)

Initially, I note that the ALJ was reviewing Dr. Mustafic's "Physical Medical Opinion" which suggested that Claimant was unable to sit, stand, walk, lift, move, or use her arms and hands in an employment setting. *See* AR at 1270-72. Bearing that in mind, I find that the ALJ both properly considered Dr. Mustafic's opinions and properly addressed the consistency and supportability of Dr. Mustafic's opinions. The ALJ also properly supported his conclusions that Dr. Mustafic's opinions were not fully consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Claimant faults the ALJ for finding "Dr. Mustafic does not give specific citations to the record or any objective findings other than the recent MRI" because Dr. Mustafic referenced two MRIs, which appear from the record to have occurred on the same date. *See* AR at 1269. I am unpersuaded that such an argument amounts to error on the part of the ALJ. Claimant also argues that the ALJ's reliance on statements by Dr. Mustafic that "conservative measures 'helped' and 'improved'" Claimant's systems is inconsistent with treatment notes from both Dr. Mustafic and other providers that conservative treatment was not effective. (Doc. 11 at 22) (citing AR 793, 1058, 1063, 1163, 1165, 1216, 1229). While it is true that there are medical records which suggest that conservative treatment was not always effective, all the record cited by Claimant involved the continuation of conservative treatment or Claimant declining treatment. Thus, again, I find unpersuasive Claimant's argument that the ALJ's analysis of Dr. Mustafic's opinion constitutes error. Claimant also points out that on November

30, 2023, Dr. Mustafic noted spinal surgery was recommended for Claimant by another doctor. (Doc. 11 at 23) (citing AR 69). Also, in a treatment note from December 11, 2023, Dr. Mustafic opines that Claimant "should really be having surgery." (AR at 87.) Claimant maintains that the ALJ erred in finding that Claimant "is not likely a surgical candidate. (Exhibit 9F/18, 20, 29)." However, the ALJ cannot be faulted because Dr. Mustafic's "Physical Medical Opinion," also dated December 11, 2023 states unequivocally that Claimant "is not currently a surgical candidate," even crossing out "is a surgical candidate" which apparently was her initial comment. *See* AR at 1269. The ALJ did not err in following Dr. Mustafic's own opinion in the "Physical Medical Opinion" reviewed in the ALJ's decision. Ultimately, even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Mustafic's opinion and the ALJ should be affirmed on this issue.

Turning to the ALJ's credibility determination, the ALJ determined that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR at 51.) The ALJ also specifically found that the "medical evidence does not fully support the claimant's alleged severity of symptoms and limitations." (*Id.* at 50.) The ALJ also addressed Claimant's pain levels, effectiveness of medications, and precipitating and aggravating factors. (*Id.* at 49-51.) Further, the ALJ addressed Claimant's activities of daily living:

> Regarding her daily living activities, the claimant testified that she does not cook, clean or do laundry. However, she is able to live in an apartment

> with her boyfriend and cares for her 10- year-old child while he is at work. She said she can drive and takes her child to and from school. In Function Reports, the claimant indicated that she does personal care, prepares simple meals, fold laundry, dust, drive, shop for groceries with her son's help, and goes to doctor appointments. She reported being able to lift 5 to 10 pounds. (Exhibits 6E, 11E) These activities suggest that she is more physically capable than alleged.

(*Id.* at 50-51.)

Based on the foregoing, it is clear from the ALJ's decision that she considered and addressed the *Polaski* and SSR 16-3p factors in determining that Claimant's subjective allegations of disability and the testimony of her witnesses were not fully credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Claimant's subjective complaints, I find that the ALJ's credibility determination should not be disturbed. *See Johnson*, 240 F.3d at 1148.

In determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for her complaints. (AR at 49-52.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making her overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 51.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618; *see also Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (alteration in original) (citation omitted)."). Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803.

The hypothetical the ALJ posed to the VE did "set forth impairments supported by substantial evidence in the record and accepted as true." *See Goff*, at 421 F.3d at 794. The ALJ asked the VE to:

> assume this individual would be limited to lifting 20 pounds occasionally, 10 pounds frequently, carrying 20 pounds occasionally, 10 pounds frequently. This hypothetical individual could sit for six hours in an eight-hour day, could stand for six hours in an eight-hour day, they could walk for six hours in an eight-hour day. This individual could climb ramps and stairs frequently, climb ladders, ropes or scaffolds occasionally, could stoop frequently, kneel frequently, crouch frequently and crawl frequently.

(AR at 322-23.) It is clear that the ALJ's hypothetical question was based on the ALJ's RFC assessment, findings, and conclusions, which are supported by substantial evidence on the record as a whole. Therefore, I conclude that the ALJ's hypothetical question properly included only those impairments which were substantially supported by the record as a whole and captured the concrete consequences of Claimant's deficiencies. *See Goff*, 421 F.3d at 794; *Hunt*, 250 F.3d at 625. Therefore, I find that the ALJ's

hypothetical question was sufficient and I recommend that the District Court affirm the ALJ's decision.

## *IV. CONCLUSION*

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 13th day of October, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa