**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| HALIDA H.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | No. 25-CV-2013-CJW-MAR<br><br><br>**ORDER** |

## *I. INTRODUCTION*

The matter before the Court is a Report & Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending the Court affirm the decision of the Administrative Law Judge ("ALJ") denying Halida H.'s ("claimant") application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), Title 42, United States Code, Sections 401–34. (Doc. 25). Plaintiff filed objections to the R&R. (Doc. 26). For the reasons stated below, the Court accepts Judge Roberts' R&R (Doc. 25) without modification.

## *II. BACKGROUND, STANDARDS, AND THE ALJ'S FINDINGS*

The Court finds that Judge Roberts accurately set out the background, disability determinations and burden of proof, the ALJ's findings, and the substantial evidence standard, (Doc. 25, at 1–7). Thus, the Court adopts those portions of the R&R and incorporates them by reference without replicating them here.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

The key background information as summarized by Judge Roberts is that claimant, born in 1973, allegedly became disabled due to COPD, depression, stress/anxiety, back pain, breathing problems, and headaches. (AR 329, 492-93). She alleged an onset date of August 19, 2021. (AR 45). The Commissioner denied claimant's disability claim. (AR 45, 329-36). An administrative law judge ("ALJ") held a hearing, at which claimant testified (through an interpreter) and a vocational expert ("VE") testified. (AR 305-28).

The ALJ found claimant suffered from the following severe impairments: obesity, hypothyroidism, and degenerative disc disease of the lumbar spine and cervical spine. (AR 47). The ALJ found claimant had the following residual functional capacity ("RFC") for employment:

> [C]laimant has the residual functional capacity to perform light work, as defined in 20 CFR [§] 404.1567(b) including the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour day, stand for 6 hours in an 8 hour-day and walk for 6 hours in an 8-hour day. The claimant can climb ladders, ropes and scaffolds occasionally, and can climb ramps and stairs, stoop, kneel, crouch and crawl frequently.

(AR 49). The ALJ found claimant could perform past work as a housekeeper, but after testimony from the VE, also found alternatively that she could perform other jobs in the national economy. (AR 52-53). Based on these findings, the ALJ concluded that claimant was not disabled. (AR 53). The Appeals Council denied claimant review, (AR 1-4), and this suit followed.

## *III. STANDARD OF REVIEW OF AN R&R*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may

> accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## *IV. DISCUSSION*

Claimant argues that the ALJ erred in: (A) evaluating the opinion of claimant's treating physician; (B) improperly evaluating claimant's subjective allegations about the intensity, duration and limiting effects of her symptoms; and (C) relying on the VE's response to an improper hypothetical question. (Doc. 26). Judge Roberts found the ALJ did not err on any of these grounds. (Doc. 25). Judge Roberts recommended the Court

affirm the ALJ's decision. (*Id.*, at 19). The Court will address each of claimant's objections in turn.

### A. *The ALJ's Evaluation of a Treating Physician's Opinion*

Claimant argues that the ALJ erred in evaluating and weighing Dr. Lydia Mustafic's opinion that claimant was "unable to sit, stand, walk, lift, move, or use her arms and hands in an employment setting." (Doc. 11, at 3-13; Doc. 25, at 15; AR 1270-72). In his R&R, Judge Roberts summarized and quoted from the ALJ's findings as to the weight given to Dr. Mustafic's opinions as compared to the overall medical history. (Doc. 25, at 13-14). Judge Roberts also summarized and quoted from the ALJ's evaluation of the consultative physician's opinions and why the ALJ found them persuasive. (*Id.*, at 14-15). Judge Roberts found

> the ALJ both properly considered Dr. Mustafic's opinions and properly addressed the consistency and supportability of Dr. Mustafic's opinions. The ALJ also properly supported his conclusions that Dr. Mustafic's opinions were not fully consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Claimant faults the ALJ for finding "Dr. Mustafic does not give specific citations to the record or any objective findings other than the recent MRI" because Dr. Mustafic referenced two MRIs, which appear from the record to have occurred on the same date. *See* AR at 1269. I am unpersuaded that such an argument amounts to error on the part of the ALJ. Claimant also argues that the ALJ's reliance on statements by Dr. Mustafic that "conservative measures 'helped' and 'improved'" Claimant's systems is inconsistent with treatment notes from both Dr. Mustafic and other providers that conservative treatment was not effective. (Doc. 11 at 22) (citing AR 793, 1058, 1063, 1163, 1165, 1216, 1229). While it is true that there are medical records which suggest that conservative treatment was not always effective, all the record cited by Claimant involved the continuation of conservative treatment or Claimant declining treatment. Thus, again, I find unpersuasive Claimant's argument that the ALJ's analysis of Dr. Mustafic's opinion constitutes error. Claimant also points out that on November 30, 2023, Dr. Mustafic noted spinal surgery was recommended for Claimant by another doctor. (Doc. 11 at 23) (citing AR 69). Also, in a treatment note from December 11, 2023, Dr. Mustafic opines that Claimant "should

> really be having surgery." (AR at 87.) Claimant maintains that the ALJ erred in finding that Claimant "is not likely a surgical candidate. (Exhibit 9F/18, 20, 29)." However, the ALJ cannot be faulted because Dr. Mustafic's "Physical Medical Opinion," also dated December 11, 2023 states unequivocally that Claimant "is not currently a surgical candidate," even crossing out "is a surgical candidate" which apparently was her initial comment. *See* AR at 1269. The ALJ did not err in following Dr. Mustafic's own opinion in the "Physical Medical Opinion" reviewed in the ALJ's decision. Ultimately, even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Mustafic's opinion and the ALJ should be affirmed on this issue.

(Doc. 25, at 15-16).

Claimant "objects to the finding that the two recent MRIs cited by Dr. Mustafic are insufficient to satisfy the 'supportability' factor in 20 C.F.R. §1520c(c)(1)." (Doc. 26, at 2). Claimant insists that the two MRIs revealed claimant had spinal disc compression of a nerve root. (*Id.*, at 2-3). Claimant also objects to Judge Roberts' finding that the ALJ did not commit error when the ALJ found that conservative treatment was sufficient and claimant declined other treatment. (*Id.*, at 3). Claimant argues that the records show that conservative treatment never provided her "with any significant benefit" and there was only one instance when claimant declined further injections when prior injections did not provide any significant benefit. (*Id.*). As for whether claimant needed surgery, claimant argues "there was confusion about whether or not [claimant] had been offered surgery by another provider and/or had declined surgery on a previous occasion." (*Id.*, at 3-4). The confusion may have arisen from claimant not speaking English. (*Id.*, at 4). Claimant insists that Dr. Mustafic believed that claimant really did need surgery and was a surgical candidate, but perhaps just not currently because of the conservative treatment. (*Id.*). Claimant argues that if there is confusion about whether

claimant's impairments were so severe as to warrant surgery, the case should be remanded for the ALJ to make further findings. (*Id.*, at 4-5).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These regulations eliminated the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions. *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the

written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) . . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

Here, the ALJ properly evaluated the weight afforded to Dr. Mustafic's opinion, and adequately articulated the basis for the ALJ's findings. It is clear, and apparently undisputed, that medical professionals treated claimant's back issues with conservative treatment and ruled out surgery, at least for the time. Although claimant asserts the conservative treatment did not provide her with "significant" benefit, the medical professionals continued to provide conservative treatment and did not find surgery necessary. It was not unreasonable for the ALJ to conclude, therefore, that conservative treatment was sufficient, even if claimant did not think it provided her with significant benefits. Again, claimant explains that she declined even conservative treatment one time because it did not provide her with "significant" benefit, but the ALJ was not amiss in considering her declination of injections as a further indication that Dr. Mustafic's opinion about the severity of claimant's impairment was not reliable. There is nothing in the record that suggests that the ALJ was confused about what the medical records indicated as to whether claimant was a surgical candidate. The ALJ understood that Dr. Mustafic found claimant was not, at the time, recommended for surgery, even if surgery may eventually be appropriate. Thus, there is no need for a remand.

In short, as Judge Roberts noted, it is not for this Court to second-guess the ALJ's decision. This Court's obligation is to ensure the ALJ conducted a proper analysis,

considered the appropriate factors, and adequately articulated the basis of the ALJ's findings. Here, the Court finds the ALJ did so, regardless of whether a different ALJ could have come to a different conclusion.

Thus, the Court affirms the Commissioner's decision on this ground, and adopts Judge Roberts' R&R on this issue.

### *B. Claimant's Subjective Allegations*

Claimant asserts "[t]he ALJ's analysis of [claimant's] statements regarding the intensity, persistence and limiting effects of her symptoms does not meet the standard required by the Eighth Circuit and the Social Security rulings and regulations, as the ALJ's findings are not supported by good reasons or substantial evidence. The ALJ erred in finding that the objective medical evidence indicated that the Plaintiff could meet the exertional demands of light work, in evaluating the Plaintiff's activities of daily living, and in his assessment of the Plaintiff's treatment history." (Doc. 11, at 25-26; *see also Id.*, at 26-30).

Considering this issue, Judge Roberts summarized the ALJ's findings as to claimant's subjective allegations, the ALJ's comparison of her subjective complaints against the objective medical evidence and her daily living activities, and found "it is clear from the ALJ's decision that she considered and addressed the Polaski and SSR 16-3p factors in determining that Claimant's subjective allegations of disability and the testimony of her witnesses were not fully credible." (Doc. 25, at 17).

Claimant now asserts that Judge Roberts erred because the medical evidence shows that the ALJ overstated claimant's ability to perform daily activities and, regardless, those daily activities do not translate to ability to perform light exertional work. (Doc. 26, at 5-6). Claimant criticizes the R&R for not addressing these arguments. (*Id.*, at 6).

The medical records do not conclusively show that the ALJ overstated claimant's ability to perform daily activities. The ALJ discussed the various x-rays, MRIs, and

EMG, and found they did not support the presence of disabling impairments. (AR 50). The ALJ also noted that the medical records reflected that claimant could ambulate without an assistive device, despite reports of motor weakness. (*Id.*). As noted above, the ALJ considered that claimant's conservative treatment was often reported as effective in relieving her symptoms. (*Id.*). And the ALJ noted that claimant did not undergo surgery, but rather received physical therapy, injections, and medication. (*Id.*). Conservative treatment, medication management, and a lack of required surgical intervention all supported the ALJ's decision. *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016). Although claimant can pick out other portions of the medical records to find support for her argument, the question before this Court is whether there was substantial evidence in the record as a whole to support the ALJ's conclusion. Here, there was.

The Court finds the ALJ also reasonably evaluated claimant's daily activities. (AR 50-51). Although claimant testified she did not perform any housework (AR 319), she admitted caring for her 10-year-old child, driving, and taking her child to and from school (AR 50, 319, 527). Claimant also reported in her Function Report that she prepared food, folded laundry, wiped and dusted, went out daily, drove a car, shopped in stores, handled money, and talked with family. (AR 527-530). Again, claimant has a different view of these daily activities, whether they are inconsistent with her subjective claims, and whether they translate to an ability to work. Nevertheless, the question for this Court is whether the ALJ reasonably considered claimant's daily activities in assessing the credibility of claimant's subjective claims about her symptoms. Here, the ALJ did so.

Thus, the Court adopts Judge Roberts' R&R on this issue.

***C. The ALJ's Reliance on the Vocational Expert's Answer to Questions***

Claimant argues that Judge Roberts erred in finding the RFC assessment, incorporated into a hypothetical question posed to the vocational expert, accurately reflected claimant's limitations. (Doc. 26, at 6). Judge Roberts reviewed the entire

record and found "the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant." (Doc. 25, at 17). Given that, Judge Roberts further concluded that a hypothetical question posed to the vocational expert based on that RFC was appropriate. (*Id.*). Claimant argues that

> The most glaring error in the ALJ's residual functional capacity assessment, which is quoted on page 18 of the Report and Recommendation, is the finding that [claimant] could stand and/or walk for six hours of an eight hour workday. (Rep. and Rec. p. 18). The evidence in the record overwhelmingly supports a finding that [claimant], at least by the time of the ALJ hearing, was unable to stand and/or walk for six hours of an eight hour workday.

(Doc. 26, at 6). Claimant argues that, at best, the record shows that she could only work at a sedentary level. (*Id.*, at 7).

The viability of this issue is dependent on claimant's assertion that the ALJ erred in assessing and weighing the medical evidence and claimant's subjective complaints. The Court has found above that the ALJ did not do so. Again, although claimant can find portions of the record that could support an alternative finding, the Court finds that substantial evidence in the record as a whole supports the ALJ's findings. Given those findings, the ALJ's RFC was appropriate. Given the RFC, the hypothetical question posed to the vocational expert was proper because it incorporated the RFC. *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991).

Thus, the Court adopts Judge Roberts' R&R on this issue.

## *V. CONCLUSION*

For these reasons:

1. The Court **accepts** Judge Roberts' R&R (Doc. 25) without modification. *See* 28 U.S.C. § 636(b)(1).

2. Following Judge Roberts' recommendation, the ALJ's decision denying claimant's application for DIB is **affirmed**. Judgment will enter against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 19th day of November, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa